**UNITED STATES, Appellee**

v.

**Joseph R. FORTNER, Senior Airman
U.S. Air Force, Appellant.**

**No. 68,009.
CMR No. 28446.**

U.S. Court of Military Appeals.

Argued April 7, 1993.

Decided Aug. 18, 1993.

For Appellant: *Captain Robert A. Parks* (argued); *Colonel Terry J. Wood-* *house* (on brief); *Colonel Jeffrey R. Owens, Major Mary C. Yastishock, Major Alice M. Kottmyer, Captain Richard W. Aldrich.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Brenda J. Hollis.*

*Opinion of the Court*

COX, Judge:

The issue in this case is whether the opinion of a polygrapher that appellant had lied during a polygraph examination was improperly smuggled into evidence by the Government.[1] We agree that such an implication was presented. However, under the circumstances of this case, there is no possibility that appellant was prejudiced. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

Appellant was tried on February 21–22, 1990, at Mather Air Force Base, California, by a military judge sitting alone as a general court-martial. Contrary to his pleas, he was convicted of two specifications of carnal knowledge with his 15–year–old niece, in violation of Article 120, UCMJ, 10 USC § 920.[2] The evidence against appellant consisted primarily of the testimony of the victim; the testimony of a cousin (who also admitted having carnal knowledge with the victim) that appellant had made an admission to him and had attempted to influence him to not admit his own misconduct or report appellant's and to not testify; and evidence of the victim's post-traumatic stress disorder and marked psychiatric

1. The granted issue asks:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY PERMITTING, OVER DEFENSE OBJECTION, TRIAL COUNSEL TO INTRODUCE EVIDENCE REGARDING A POST–POLYGRAPH INTERVIEW OF APPELLANT, THE CLEAR IMPORT OF THE EVIDENCE BEING THAT APPELLANT HAD UNDERGONE AND "FAILED" AN OSI POLYGRAPH.

2. The military judge sentenced appellant to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 1 year, and reduction to E–1; and the convening authority approved the sentence. The Court of Military Review set aside the finding of guilty of one of the specifications and dismissed it on the grounds of insufficiency of evidence. Reassessing the sentence, that court affirmed only so much of the sentence as provided for a bad-conduct discharge, confinement for 1 year, and reduction to E–1. 34 MJ 836, 841 (1992).

change at about the time of the alleged events.

The evidence here in issue came about during cross-examination of appellant, wherein trial counsel raked appellant over the coals about his semi-admitted attempts to silence his cousin. Abruptly switching gears, trial counsel launched into the sequence of questions and answers in issue, repeated here in its entirety:

Q:[TC] Do you remember having a conversation with Agent Pulliam at Travis Air Force Base? Remember talking to him.

ADC: Your Honor, I'm going to object at this point.

TC: I'm not going to go into any matters that are inadmissible.

ADC: Your Honor, I would still object. I don't know where counsel is going; and if she's getting—will, let me let Captain Dowling address that matter because he was on the case at the time before I was.

DC: Your Honor, I think defense's position is that we're just getting into an area dealing with a post-polygraph conversation between the special agent from the OSI and Airman Fortner which was told to them in letter and by me, myself, over the phone that no such post-polygraph conversation should occur and that would be our objection.

MJ: You are asserting that you did communicate that to OSI agents that they were not to have a post-polygraph conversation with your client, is that right?

DC: In letter form and over the phone.

MJ: Then I'm going to sustain the objection. If they did that contrary to your instructions, I'll sustain that objection.

TC: One moment, sir.

MJ: Well, wait a minute. What is your position? Was he under a proper rights advisement?

TC: He was under rights advisement, sir, and it wasn't an interview. I believe the proper term is a post-poly-

graph interview and this was not an interview, it was a comment and an answer which is what I was trying to—the polygrapher asked him no questions and it was—

MJ: I'll permit the question, but feel free to renew; and if it is improper, feel free to renew your objection and I can, of course, disregard because this is a bench trial. Go ahead.

By Trial Counsel:

Q. *Do you recall Agent Pulliam making the comment that maybe it was time to tell your attorneys the truth?* Do you remember him saying that?

A. *His exacts [sic] words were, I think you should go back and tell your attorney the truth.*

Q. And do you remember saying, yeah, maybe I should?

A. I said, yes, I will.

Q. But you didn't, did you?

A. Yes, I have been, and I'm still maintaining the truth, ma'am.

TC: Thank you, nothing further.

MJ: Is there redirect?

ADC: Your Honor, prior to redirect, what I'd like to do is I would like to reimpose that objection that there were strict instructions that there was to be no post-polygraph interview. While this was not a question per se, *it falls into that category of a statement obviously meant to elicit a response and while we don't feel that the response is necessarily incriminating, it is a statement or technically, a statement that we feel was made in an interrogation setting.*

MJ: No, I think it's admissible. I agree with you, and I'm not sure it's probative of anything, but I think it's admissible evidence, so I'm going to overrule the objection.

(Emphasis added.)

Appellant now complains that the opinion of the polygrapher (*i.e.*, that appellant had lied during the polygraph) was "obliquely introduced" into *evidence* through trial counsel's *question:* "Do you recall Agent

Pulliam making the comment that maybe it was time to tell your attorneys the truth?" We agree that the implication that appellant was being less than candid during the polygraph examination is derivable from the question and that asking appellant to verify that the statement was made in that particular context placed the matter, and the potential inference, into evidence. However, the record cannot fairly be read to suggest that counsel's objection went to any implied opinion in the polygrapher's statement. Plainly, counsel and the military judge were both focused on the "response" "elicit[ed]," which happened to be nonincriminatory. Thus, the issue, to be cognizable, would have to amount to "plain error." *United States v. Fisher*, 21 MJ 327 (CMA 1986).

In that regard, we note that this case was tried well after our opinion in *United States v. Gipson*, 24 MJ 246 (CMA 1987), where we made it abundantly plain that any party wishing to introduce the results of a polygraph test or an opinion as to truth by a polygrapher had substantial foundational prerequisites to satisfy.[3] We have no reason to doubt that the military judge was well acquainted with our *Gipson* decision, and needless to say, there was absolutely no effort on the part of the prosecution to establish the relevance of the polygrapher's opinion in this case.

Further, the record does not disclose, and presumably the military judge did not know, what questions were asked by the polygrapher. Therefore, even if for some

unimaginable reason the military judge were to have credited this polygrapher's alleged opinion in the slightest degree, the judge would have been forced to speculate wildly as to what appellant was supposed to have lied about. Moreover, appellant had earlier been forced to concede in his trial testimony that he had lied outright under oath in his pretrial (and pre-polygraph) statement to law enforcement officials. Therefore, the most fanciful theory of prejudice evaporates, for even if the judge noticed the polygrapher's presumed belief that appellant lied during the polygraph exam, that belief may well have been predicated on matters later admitted by appellant at trial. Suffice it to say, we are supremely confident that the military judge engaged in no such farfetched speculation and that he paid no heed whatever to any supposed implication in the polygrapher's hearsay statement to appellant. We are equally confident that no plain error or prejudice occurred here. *United States v. Fisher, supra;* Art. 59(a).

We confess to perceiving no possible relevance in appellant's *response* to the polygrapher's statement, but like defense counsel and the military judge, we perceive no possible prejudice either. Art. 59(a).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

**3.** This case was tried prior to July 6, 1991, the effective date of Mil.R.Evid. 702, which purports to ban from admission at courts-martial "the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination." Exec. Order No. 12767, 56 Fed.Reg. 30284, 30295–96, 30299 (1991).